1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Gregory J. Hostrawser,              )   No. 07-0298-PHX-JAT
                                        )
10              Plaintiff,              )   **ORDER**
                                        )
11  vs.                                 )
                                        )
12                                      )
    Michael J. Astrue,                  )
13                                      )
                Defendant.              )
14                                      )
                                        )
15  _____    )

16

17          Gregory J. Hostrawser ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) to seek

18  judicial review of Defendant's denial of his request for Social Security disability benefits

19  under Title II of the Social Security Act.  (Doc. # 1 (Complaint).)   Pending before the Court

20  are the parties' cross-motions for summary judgment.  (Doc. # 14 (Plaintiff's Motion for

21  Summary Judgment); # 21 (Defendant's Cross-Motion for Summary Judgment).)   After

22  considering the parties' arguments and the evidence in the record, the Court will deny

23  Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary

    Judgment.
24
    **I.  PROCEDURAL HISTORY**
25
            On October 1, 2004, Plaintiff filed an application for a period of disability and
26
    disability insurance benefits under Title II of the Social Security Act, alleging he became
27
    disabled on September 2, 2004.  (Tr. 15.)  He later amended that date to October 1, 2004.
28

1   (Id.) Specifically, Plaintiff claims that he suffers from a degenerative disc disease, herniated

2   lumbar, hypertension, hyperlipidemia, and obesity, which inhibit him from sustaining

3   substantial gainful employment.  (Pl.'s SOF ¶ 4.)  Plaintiff's claim was denied both initially

4   and upon reconsideration.  (Def.'s SOF 1.)  Plaintiff thereafter timely requested a hearing,

5   which was held before administrative law judge ("ALJ") Michael Cianci.  (Id.)

6         A hearing was conducted in front of the ALJ on October 30, 2006, and the ALJ issued

7   a written decision denying Plaintiff's claim on November 15, 2006.  (Tr. 15-22.)  The ALJ

8   found that although Plaintiff has the severe impairments of obesity, hypertension, a history

9   of a shoulder disorder, a back disorder, and lacks the residual functional capacity ("RFC")

10  to perform his past work, he is able to perform other light work.  (Tr. 17-18, 20-21.)  Plaintiff

11  appealed to the Appeals Council, but they denied Plaintiff's request for review and adopted

12  the ALJ's decision as the final decision of the Commissioner.  (Def.'s SOF 2.)  As a result,

13  Plaintiff filed a Complaint to the Court seeking judicial review pursuant to 42 U.S.C. § 405

14  (g).

15  **II. STANDARD OF REVIEW**

16        The Commissioner's decision to deny benefits will be overturned "only if it is not

17  supported by substantial evidence or is based on legal error."  Magallanes v. Bowen, 881

18  F.2d 747, 750 (9th Cir. 1989).  Substantial evidence is more than a mere scintilla, but less

19  than a preponderance.  Reddick v. Charter, 157 F.3d 715, 720 (9th Cir. 1998).  It is such

20  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

21  Id.

22        In determining whether there is substantial evidence to support a decision, this Court

23  considers the record as a whole, weighing both the evidence that supports the ALJ's

24  conclusions and the evidence that detracts from the ALJ's conclusions.  Id.  If there is

25  sufficient evidence to support the Commissioner's determination, the Court cannot substitute

26  its own determination.  See Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).

27  Additionally, the ALJ is responsible for resolving conflicts in medical testimony, determining

28  credibility, and resolving ambiguities.  See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

1   1995). Thus, if on the whole record before this Court, substantial evidence supports the

2   Commissioner's decision, this Court must affirm it. See Hammock v. Bowen, 879 F.2d 498,

3   501 (9th Cir. 1989); see also 42 U.S.C. § 405(g).

4        Pursuant to 20 C.F.R. § 404.1520(a), the ALJ must perform a five-step analysis to

5   determine whether a claimant is disabled. The questions are posed sequentially until a

6   finding of disability is affirmatively rejected or established. Under the Social Security Act,

7   a "disability" is defined as an "inability to engage in any substantial gainful activity by

8   reason of any medically determinable physical or mental impairment which can be expected

9   to result in death or which has lasted or can be expected to last for a continuous period of not

10  less than 12 months." 42 U.S.C. § 423 (d)(1)(A). An individual is determined to be under

11  a disability if, "his physical or mental impairment or impairments are of such severity that

12  he is not only unable to do his previous work but cannot, considering his age, education, and

13  work experience, engage in any other kind of substantial gainful work which exists in the

14  national economy" 42 U.S.C. § 423 (d)(2)(A); Reddick, 157 F.3d at 721. If the claimant

15  shows that he or she is unable to perform past relevant work, the burden shifts to the

16  Commissioner to show that the claimant "can perform other substantial gainful work that

17  exists in the national economy." Reddick, 157 F.3d at 721. "If the Commissioner meets [his]

18  burden, the claimant has failed to establish disability." Thomas, 278 F.3d at 955.

19  **III. FACTUAL BACKGROUND**

20      **A. Plaintiff's Disability Claim**

21       Plaintiff claims that he has been unable to work since October 1, 2004. (Tr.15.) He

22  alleges that he is disabled due to a multi-level degenerative disc disease, herniated lumbar

23  disc, hypertension, hyperlipidemia, and obesity. (Pl.'s SOF ¶ 5.)

24      **B. Plaintiff's Background**

25       Plaintiff was born on June 26, 1958, and has at least a high school education. (Def.'s

26  SOF ¶ 1.) Plaintiff is divorced and currently shares a home with a friend in Glendale,

27  Arizona. (Tr. 228.) Plaintiff previously filed for, and was granted, disability benefits from

28  July 1993 through August 1994. (Tr. 114.) Plaintiff's earning records show that no income

1  was reported from 1994 through 1998. (Tr. 73.) Plaintiff testified at the hearing that during

2  this time period, he was married and his wife was working. (Tr. 321.) In addition, Plaintiff

3  testified that he received rent payments from some rental properties that he owned. (Id.)

4  Plaintiff has worked part time as a plumber since October 2004. (Tr. 321-22.)

5      Plaintiff testified at the hearing on October 30, 2006, regarding his back and leg pain.

6  (Tr. 309-12.) Plaintiff stated that he suffers from a sharp, stabbing pain that occurs "lots of

7  the time now." (Tr. 312.) Further, Plaintiff stated that he can only sit in a chair for a little

8  more than a half hour. (Tr. 313.) Plaintiff is on several oral medications and has been

9  receiving injections for his pain from Dr. Porter. (Tr. 310-11.)

10     In addition to the above, Plaintiff is also an obese man who smokes a half a pack of

11 cigarettes a day. (Tr. 228, 230.) At the time of the hearing, Plaintiff testified that his height

12 was 6'1" and he weighed 370 pounds, an increase of about 90 pounds since October of 2004.

13 (Tr. 313-14.) Plaintiff testified that he continues to gain weight due to his inactivity, and is

14 not a candidate for surgery because he is too heavy. (Tr. 314.) Also, Plaintiff testified that

15 he is forced to lay down seven hours a day due to his pain. (Tr. 315.) Finally, Plaintiff

16 testified that he is able to drive, occasionally grocery shop, has taken a trip overseas to the

17 Ukraine, and keeps busy by watching tv and checking his email on his computer. (Tr. 316-

18 18.)

19     **C. Record Evidence**

20         **1. Physical Impairments**

21     Plaintiff's treating physician, Lloyd D. Armold, D.O., diagnosed Plaintiff with a

22 herniated lumbar disk and associated back pain. (Tr. 139-41.) On June 3, 2005, Dr. Armold

23 filled out a form assessing Plaintiff's ability to do work related activities. (Tr. 139.) Dr.

24 Armold indicated that Plaintiff is unable to frequently or occasionally lift or carry ten pounds.

25 (Id.) Dr. Armold also concluded that Plaintiff is able to stand or walk during the day for less

26 than a half an hour. (Tr. 140.) Dr. Armold supports this conclusion by Plaintiff's

27 contentions that he experiences pain if he stands for more than that period of time. (Id.) In

28 addition, Dr. Armold indicated that Plaintiff is only able to sit for a half an hour to an hour

in a normal eight hour workday.  (Tr. 140.)  According to Dr. Armold, Plaintiff has no limitations in seeing, hearing, speaking, balancing, handling, fingering, feeling, and gasping. (Tr. 140-41.)  However, Plaintiff is limited in working around heights.  (Tr. 141.)  Finally, Dr. Armold indicated on the form that Plaintiff is never able to climb, stoop, kneel, crouch, or crawl.  (Tr. 141.)  Dr. Armold noted that he based his assessment on his diagnosis of Plaintiff's herniated lumbar disc and Plaintiff's obesity.  (Id.)

On March 16, 2005, Plaintiff was referred to an orthopedist, Dr. Michael A. Steingart. (Pl.'s Mem. Supp. Summ. J. 5.)  Dr. Steingart concluded that Plaintiff is only able to sit and stand for up to 15 minutes. (Tr. 147.)  In addition, Dr. Steingart concluded Plaintiff "has increasing back pain and leg numbness . . . [and] [h]e cannot walk for more than 30 minutes at a normal pace . . . . He can not be lifting greater than ten pounds infrequently."  (Id.)  On March 8, 2005, Dr. Steingart noted in an exam record, however, that the epidural injections Plaintiff received helped "[Plaintiff's] leg pain significantly."  (Tr. 148.)

Thereafter, Plaintiff was referred to pain management physician John C. Porter, M.D. On October 12, 2006, Dr. Porter and Nurse Practitioner John Stilwell filled out a Medical Assessment of Ability to Work form, checking boxes that indicate Plaintiff can lift less than ten pounds both frequently and occasionally.  (Tr. 222.)  Further, Both Dr. Porter and NP Stilwell indicated that Plaintiff can stand or walk less than two hours in an eight hour workday and can sit with normal breaks for less than six hours in an eight hour workday. (Id.)  In addition, they found that Plaintiff is occasionally able to use his right and left hands for handling, fine manipulation, feeling, and reaching.  (Tr. 223.)  Finally, they concluded that Plaintiff is limited in working with heights, moving machinery, and working in temperature extremes, chemicals, dust and noise.  (Tr. 224.)  on August 16, 2006, they concluded that Plaintiff suffers from chronic low back pain and leg pain, has a tendency to use pain medication inappropriately, is morbidly obese, and suffers from hypertension, depression, and anxiety.  (Tr. 230.)

On February 24, 2005, Plaintiff went to Dr. David Rand's office for a consultative examination.  (Pl.'s SOF ¶ 9.)  Dr. Rand made a comment concerning Plaintiff's need to lose

weight.  (Tr. 217.)   In response, Plaintiff became offended and walked out of the office before the exam was completed.  (Id.)  Dr. Rand made an assessment of Plaintiff's work limitations based upon his interview with the Plaintiff and his observations of Plaintiff's mobility before he walked out. (Tr. 217-18.) Also, Dr. Rand based his opinion on his review of Plaintiff's medical records. (Id.) Dr. Rand concluded that "based on the records reviewed, the patient does have degenerative disc disease of multiple level but no true herniations . . . . [His MRI] . . . showed mild central canal narrowing at C5-C6 and at left C5-C6 and C4-C5 foraminal stenosis."  (Tr. 217.)  Further, Dr. Rand observed that Plaintiff was able to walk out with a "very brisk kind of gait."  (Id.)  Based upon his diagnosis, Dr. Rand concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk six to eight hours a day, sit six to eight hours a day, and that Plaintiff is capable of occasionally climbing, balancing, stooping, kneeling, crouching, or crawling and capable of constantly reaching, handling, fingering, feeling, and grasping.  (Tr. 219-20.)

On March 22, 2005, Dr. Drinkwater conducted a consultative examination of Plaintiff. (Pl.'s SOF ¶ 6.)  Dr. Drinkwater provided a thorough analysis of Plaintiff's physical condition.  (Tr. 215-16.)  His physical exam revealed:

> [Plaintiff's a]ctive range was full.  He could forward flex to 50 out of 50 degrees, extend to 60 out of 60 degrees, right and left rotate to 80 out of 80 degrees and left and right lateral bend to 50 out of 45 degrees.  Adson's maneuver was negative as was the cervical compression.  His back exam revealed exogenous obesity at C7 fat pad.  Plumbline was in the midline. He was able to squat up and down.  He first did so primarily on his right knee but then did so equal laterally.  Active range of motion as measured with two inclinometers revealed 100-60 = 40 degrees, extension of 20-0= 20 degrees, right and left lateral bending to 20 degrees and right and left rotation to 20 degrees.  There was no tenderness.  No muscle spasm . . . . He ambulated with a normal bipedal gait.  He was able to tandem walk, toe walk for a few feet, heel walk, stand on one leg and then the other but did so better on the right than the left leg, get up and off the examining table and chair . . . . Upper extremity exam revealed . . . normal bulk, tone, and strength . . . . Lower extremity exam revealed a large bulk, normal tone, and normal strength. . . . In lying position, he had complaints of low back pain . . . . Range of motion was functional throughout the hips, knees and ankles.  However, in internal rotation of his left hip, he had low back pain.

(Tr. 215-16.)  Based upon this examination, Dr. Drinkwater came to the conclusion that Plaintiff had a "decreased range in his lumbar spine, full plus functional strength of his upper extremities," and an abnormality in the left lower extremity.  (Tr. 216.)

On March 29, 2005, a state agency reviewer made an assessment of Plaintiff's work capabilities.  (Tr. 206-13.)  Dr. Fujikami Raymond, a surgeon, viewed Plaintiff's previous medical records.  (Tr. 206.)  Based upon his review, Dr. Raymond concluded, by checking boxes on a Physical Residual Functional Capacity Assessment form, that Plaintiff will occasionally be able to lift or carry twenty pounds, frequently lift and carry ten pounds, stand or walk about six hours in an eight hour workday, and sit about six hours in an eight hour workday. (Tr. 206.) He also found that Plaintiff has no environmental limitations.  (Tr. 209.) Further, Dr. Raymond found that Plaintiff is occasionally able to climb, stoop, kneel, crouch, and crawl, but is limited in his ability to balance.  (Tr. 207.)  Finally, Dr. Raymond noted that Plaintiff's "symptoms and allegations are not supported by evidence in [the] file." (Tr. 210.)

On June 23, 2005, another non-examining physician, Thomas F. Disney, rendered an opinion on Plaintiff's work capacity based upon his review of Plaintiff's medical records. (Tr. 131-37; Pl.'s SOF ¶ 13.)  Dr. Disney found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, Plaintiff is limited to standing or walking three to five hours in an eight hour workday, and Plaintiff can sit about six hours in an eight hour workday.  (Tr. 131.)  Further, Dr. Disney found that Plaintiff can frequently balance, stoop, kneel, and occasionally crouch and crawl.  (Tr. 132.)  Dr. Disney found that Plaintiff is limited in his lower extremity, not limited in reaching, handling, fingering, and feeling, but Dr. Disney recommends that Plaintiff avoid extreme temperatures and concentrated exposure to fumes and vibrations.  (Tr. 131-34.)  Finally, even though Dr. Disney concluded that Plaintiff is limited in his ability to stand or sit during a normal eight hour workday, he noted that the objective medical evidence does not "corroborate [the] severity of [Plaintiff's] assertions."  (Tr. 135.)

### 2. Vocational Expert

The Vocational Expert ("VE") testified regarding Plaintiff's potential for future employment. (Tr. 327-30.) The VE found that plumbing is a heavy skilled occupation and that a rental office manager is considered light, and semi-skilled. (Tr. 324.) The VE further testified that plumbing is transferable to light repair work, a plumbing inspector, and a plumbing tester. (Id.) The ALJ presented the VE with a hypothetical person of the same age, work experience, and educational background as the Plaintiff. (Tr. 328.) In the first scenario, the ALJ included the following additional capabilities that would classify the worker as sedentary: (1) lifting twenty pounds occasionally; (2) lifting ten pounds frequently; (3) sitting six hours; (4) standing or walking two hours; and (5) occasional stairs, ramps, bending, crouching, crawling, and kneeling. (Id.) The VE testified that this person would be able to work as an assembly worker or quality control inspector. (Tr. 329.) Further, the VE stated that there are 4,000 assembly worker positions in Arizona and one million nationally. (Id.) For quality control inspector, the VE testified there are 1,500 positions in Arizona and 300,000 nationally. (Id.)

The second scenario included the same hypothetical person with the same additional limitations as stated above except adding a light exertional level. (Id.) The VE testified that there are several possible occupations available for this person including light repair, plumbing inspector, and plumbing tester. (Id.) For light repair, the VE testified that there would be 1,000 positions in Arizona and 300,000 nationally. (Tr. 328.) For an inspector, the numbers are 700 in Arizona and 350,000 nationally. (Id.) Finally, for a tester, the numbers would be 450 in Arizona and 75,000 nationally. (Id.)

Finally, the ALJ presented the VE with a third scenario where the individual would miss four or more days of work per month, and could not complete assigned tasks in an eight hour day for four or more days per month. (Id.) The VE stated that there would be not work available without special accommodations in that scenario. (Id.)

**IV. ALJ'S DECISION**

The ALJ evaluated Plaintiff's alleged disability claim according to the five step evaluation process set forth in 20 C.F.R. § 404.1520(a).  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 1, 2004.  (Tr. 17.)  The ALJ next determined that Plaintiff suffers from a back disorder, obesity, hypertension (stable), and history of shoulder disorder (stable), which fall within the meaning of severe impairments under 20 C.F.R. § 404.1520(c).  (Id.)  The ALJ further concluded that Plaintiff has no medically determinable mental impairment.  (Id.)  At step three, the ALJ determined that the Plaintiff "does not have an impairment or combination of impairments that meets or equals one of the listed impairments" in 20 C.F.R. § 404.1520(d), 404.1525 and 404.1526 because the "medical evidence does not establish limitations of listing level severity."[1]  (Id.)

Finally, the ALJ examined Plaintiff's RFC to perform Plaintiff's past relevant work or any other work.  (Tr. 18.)  The RFC is defined as Plaintiff's ability to do physical work activities "despite limitations from his impairments."  SSR 96-8p, 1996 WL 374184 at *2. The ALJ concluded:

> [a]fter considering the evidence of the record, the undersigned finds that the [Plaintiff's] severe medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.  Although the evidence establishes that the [Plaintiff] has severe impairments, it fails to establish that his impairments cause disabling limitations in his ability to function.

Tr. 18.)  The ALJ found that Plaintiff has the RFC to perform light work.  In coming to this conclusion, the ALJ made the following specific findings:

> 1. The [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2008.

> 2. The [Plaintiff] has not engaged in substantial gainful activity since October

---

[1] If the claimant does not have a sever impairment or combination of impairments that meet or medically equal the listed criteria in 20 C.F.R. § 404.1520(d), 404.1525, and 404.1526, the analysis continues on to step four.  See 20 C.F.R. § 404.1520(e).

1, 2004, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The [Plaintiff] has the following severe impairments: back disorder, obesity, hypertension (stable), and history of shoulder disorder (stable) (20 CFR 404.1520(c).  These impairments are severe because they cause significant limitations in the [Plaintiff's] ability to function.  He has no medically determinable mental impairment.

4. The [Plaintiff] does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 [].

5  After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work.  He is able to sit for six hours total in an eight-hour workday, stand for six hours total in an eight-hour workday, and walk for six hours total in an eight-hour workday. He is able to lift 10 pounds frequently and 20 pounds occasionally.  He is unable to climb ladders, ropes, or scaffolds and is able to occasionally climb stairs and ramps.  He is able to do occasional bending, crouching, crawling, and kneeling.

6. The [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7. The [Plaintiff] was born on June 26, 1958 and was 46 years old on the alleged disability onset date, and is currently 48 years old, which is defined as a younger individual age 45-49 (20 CFR 404.1563).

8. The [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The [Plaintiff] has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).

11. The [Plaintiff] has not been under a "disability," as defined in the Social Security Act, from October 1, 2004 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-22.)

1    Accordingly, the ALJ found that Plaintiff is not disabled under sections 216(i)

2    and 223(d) of the Social Security Act.  (Tr. 22.)

3  **V.  DISCUSSION**

4    Plaintiff contends that the ALJ's decision is not based on substantial evidence and the

5  ALJ committed several legal errors.  Specifically, Plaintiff asserts that the ALJ committed an

6  error of law by: (1) failing to provide clear and convincing reasons for rejecting the treating

7  physician's assessment of Dr. Lloyd D. Armold; (2) failing to provide clear and convincing

8  reasons for rejecting Dr. Michael A. Steingart's assessment; (3) mis-characterizing the

9  assessment of NP John Stilwell and Dr. John Porter and by failing to give clear and

10 convincing reasons for rejecting their assessment; (4) relying on the opinion of a consultative

11 examiner and on the opinion of a non-examining, non-testifying state agency reviewer; (5)

12 failing to consider the impact of obesity on Plaintiff's claim; and (6) failing to provide clear

13 and convincing reasons for rejecting Plaintiff's symptom testimony. (Pl.'s Mem. Supp. Summ.

14 J. 2-3.)   In response, Defendant argues that there was no legal error and there is substantial

15 evidence to support the ALJ's findings.  (Def. Mem. Supp. Cross Summ. J. 3.)  Therefore,

16 Defendant argues, the ALJ's decision is conclusive and the Court should affirm the

17 Commissioner's decision as supported by substantial evidence.  (Id.)

18    **A. ALJ's Treatment of the Medical Evidence**

19

20    When evaluating the medical evidence, the ALJ should give "more weight [] to a

21 treating physician's opinion than to the opinion of a non-treating physician" Andrews v.

22 Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  However, the treating physician's opinion

23 is not necessarily conclusive on the issue of disability or a physical impairment.  Matney v.

24 Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).  Moreover, the ALJ can dismiss a treating

25 physician's opinion that is conclusory, brief, and unsupported by clinical findings.  Id.  If a

26 treating doctor's "opinion is contradicted by another doctor, the ALJ may not reject this

27 opinion without" giving "'specific and legitimate reasons' supported by substantial evidence

28 in the record." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Murray v. Heckler,

722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence stating his interpretation thereof and making findings." Magallanes, 881 F.2d at 751 (internal quotes omitted) (quoting Cotton v. Bowen, 799 F.2d 1403, 1409 (9th Cir. 1986)).

If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR [§] 404.1527." SSR 96-2p, 1996 WL 374188 at *4; see Reddick, 157 F.3d 715, 725 (9th Cir.1998) ("Adjudicators must remember that a finding that a treating source medical opinion is . . . inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected . . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). In determining how much weight should be given, the ALJ should consider several factors: the length of the treatment relationship, how often the treating physician examined the Plaintiff, and the nature and extent of the treatment relationship between the patient and the treating physician. 20 C.F.R. § 404.1527; Orn, 495 F.3d at 631.

Finally, "when an examining physician provides 'independent clinical findings'" that are different from the findings provided by the treating physician, the examining physician's findings are substantial evidence. Magallanes, 881 F.2d at 751 (citing Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings are either: "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. at 633 (citation omitted). However, a treating physician's opinion can be discounted based on the results and findings of an independent consultative examination. Batson v. Comm'r, 359 F.3d 1190, 1194-95 (9th Cir. 2004).

### 1. Dr. Armold's Assessment

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting the assessment of Plaintiff's treating physicians.  (Pl.'s Mem. Supp. Summ. J. 4.) Dr. Armold, Plaintiff's treating physician for eight months, found that Plaintiff suffers from back and leg pain and is able to do less than sedentary work. (Tr. 139-41.)  The ALJ did not find his assessment persuasive, however, because the evidence in the record shows that Plaintiff's pain level was reduced significantly after he began to receive epidural injections. (Tr. 19.)  The ALJ provided a specific rationale for rejecting Dr. Armold's assessment, mainly that Plaintiff's leg pain improved. (Tr. 18.)  Further, the ALJ summarized the opinions of Dr. Drinkwater, Dr. Rand, and Dr. Raymond, which provide contradicting assessments to Dr. Armold's opinion.  (Tr. 18-19.)

Plaintiff argues that the reduction in Plaintiff's leg pain from the epidural injections is not an adequate reason to reject Dr. Armold's assessment.  (Pl.'s Mem. Supp. Summ. J. 6-7.)  Specifically, Plaintiff argues that leg pain was not a basis for Dr. Armold's findings, Dr. Armold made his assessment in spite of the reduced leg pain, and Plaintiff still suffered from back pain after he was given the injections.  (Id.)  In response, Defendant argues that Plaintiff's leg pain was a direct symptom of Plaintiff's back pain, therefore making the evidence of decreased pain in Plaintiff's leg important in evaluating Plaintiff's current work ability. (Def.'s Mem. Supp. Cross Summ. J. 8)  Defendant further contends that Plaintiff was satisfied with his medication regime.  (Id. at 9.)

The ALJ noted that Dr. Armold reported on March 2, 2005 that after Plaintiff began his epidural injections, Plaintiff no longer suffered from sciatica and had considerably less back pain. (Tr. 18.)  Also, Dr. Porter reported that Plaintiff was satisfied with his medications. (Tr. 228, 236.)  Further, Plaintiff's testimony indicates that his leg pain was a symptom of Plaintiff's back condition, meaning a reduction in leg pain would reduce Plaintiff's pain overall and increase his ability to work.  (Tr. 309, 312.)  Although Dr. Armold made his

1  assessment of Plaintiff's work capability knowing that the epidurals decreased Plaintiff's leg

2  pain, the ALJ did not err in rejecting Dr. Armold's assessment

3  because there is other medical evidence in the record to support the finding that Plaintiff's

4  pain is not as severe as he claims.  Given the opinions of Dr. Rand, Dr. Drinkwater, and Dr.

5  Raymond concerning Plaintiff's physical condition, the ALJ did not commit legal error in

6  rejecting Dr. Armold's assessment that Plaintiff is incapable of performing light work.

7      The ALJ thoroughly discussed the medical evidence in the record that contradicts Dr.

8  Armold's  assessment that Plaintiff can not perform light work.  (Tr. 18-19.)  The ALJ noted

9  that Dr. Drinkwater reported Plaintiff had "decreased range in his lumbar spine," but that

10  Plaintiff has "full plus strength in his upper extremities" with an abnormality in the lower left

11  extremity. (Tr. 19.)  Further, the ALJ summarized with detail the support Dr. Raymond listed

12  for his findings:

13
14      [Plaintiff] had a normal gait and was able to toe, heel, tandem walk, sit stand,
       and get onto the examination table.  He had full range of motion of the cervical
15      spine, limitation of lumbar flexion to 40 degrees, extension 20 degrees, and
       lateral bend and rotation 20 degrees bilaterally without tenderness or muscle
       spasm.  Straight leg raising was negative bilaterally.  He had functional range
16      of motion of the lower extremities but had back pain with internal rotation of
       the left hip.  He had intact reflexes and intact sensation except for the dorsum
17      of the left foot.

18  (Id.)

19      Plaintiff contends that the ALJ should not have considered Dr. Drinkwater's physical

20  examination because Dr. Drinkwater did not make an explicit assessment of Plaintiff's work

21  ability.  (Pl.'s Mem. Supp. Summ. J. 4-5.)  Although Dr. Drinkwater did not explicitly state

22  the level of work Plaintiff can accomplish, Dr. Drinkwater did provide an extensive analysis

23  of Plaintiff's physical abilities. (Tr. 215-16.)  Also, although Plaintiff correctly notes that Dr.

24  Drinkwater did not find that Plaintiff had no exertional limitations, Dr. Drinkwater did find

25  that Plaintiff had a full range of motion, and aside from an abnormality in his lower left

26  extremity, full strength. (Tr. 214-16.)  Further, Plaintiff's contention that the ALJ failed to

27  interpret Dr. Drinkwater's report is without merit.  The ALJ included Dr. Drinkwater's report

28

in the list of medical evidence the ALJ relied on to support his conclusion that Plaintiff is able to perform light work. (Tr. 18-19.) In addition, although Dr. Armold is a treating physician and his opinion is entitled to deference, Dr. Drinkwater's physical exam was extensive, Dr. Armold's assessment is contradicted by Dr. Rand and Dr. Raymond's assessment, and Dr. Armold based his conclusion, in part, on Plaintiff's subjective claims that his pain is severe. (Tr.140.) Further, given the guidance of SSR 83-10 in defining each level of work,[2] and Dr. Drinkwater's thorough physical examination, the ALJ properly considered and interpreted Dr. Drinkwater's findings to support the conclusion that Plaintiff is able to accomplish light work.

Second, The ALJ also discussed Dr. Rand's assessment, which contradicted Dr. Armold's opinion that Plaintiff is not capable of performing light work. (Tr. 217-21.) Dr. Rand disagreed with Dr. Armold's diagnosis, stating that in his opinion, Plaintiff has a degenerative disc disease but no true hurniations. (Tr. 217.) Dr. Rand's diagnosis was based

---

[2] SSR 83-10, 1983 WL 31251 at *5, provides the following definitions:

1. *Sedentary work*. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions . . . .

2. *Light work*. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

on his interview and partial exam of the Plaintiff and on the Plaintiff's past medical records. (Id.) It is unclear the extent of Dr. Rand's physical examination because Plaintiff became offended after Dr. Rand made a comment in regards to Plaintiff's weight, and Plaintiff left the exam early. (Id.) Although this is the case, Dr. Rand was able to interview Plaintiff about his medical history and his current pain, and observe Plaintiff's mobility. (Tr. 217-18.) Dr. Rand reported that Plaintiff walked with a "very brisk type of gait." (Tr. 217.)

In addition to Dr. Drinkwater and Dr. Rand, the ALJ also relied on Dr. Raymond's findings. (Tr. 19.) Dr. Raymond offered a non-examining opinion. (Tr. 206-213.) Based upon his review of Plaintiff's medical records, Dr. Raymond found that Plaintiff would be capable of occasionally crouching, kneeling, and crawling. (Tr. 207.) Further, Dr. Raymond found that Plaintiff would be able to occasionally lift twenty pounds, and frequently lift ten pounds, while also being able to stand about six hours in a workday and sit about six hours in an eight hour workday. (Tr. 206.) Dr. Raymond's opinion provides additional support for Dr. Drinkwater and Dr. Rand's conclusions that Plaintiff is capable of light work. Therefore, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Armold's assessment.

### 2. Dr. Steingart's Assessment

Plaintiff also claims that the ALJ's report contains legal error because the ALJ rejected Dr. Steingart's assessment without providing legally sufficient reasons. (Pl.'s Mem. Supp. Summ. J. 8.) Dr. Steingart found that Plaintiff is unable to perform sedentary work. (Tr. 147.) As Plaintiff notes, the ALJ must consider and evaluate every medical opinion that is received. 20 CFR § 404.1527(d). However, the Court is allowed to draw inferences from the ALJ's written opinion, and the ALJ need not "recite the magic words, 'I reject [Dr. Steingart's] opinion . . . because.'" Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

Similar to Dr. Armold, Dr. Steingart's assessment that Plaintiff is unable to perform sedentary work is contradicted by the opinions of Dr. Drinkwater, Dr. Rand, and Dr. Raymond. Therefore, the ALJ must provide specific and legitimate reasons for rejecting Dr.

1   Steingart's opinion.  Plaintiff argues that the ALJ failed to address why he was rejecting Dr.

2   Steingart's assessment.  (Pl.'s Mem. Supp. Summ. J. 8-9.)  Further, Plaintiff argues that the

3   ALJ selectively analyzed Dr. Steingart's note, failing to take into consideration that Plaintiff

4   still suffered from back pain.  (Id.)  Defendant responds by arguing that although the ALJ did

5   not explicitly reject Dr. Steingart's assessment, the ALJ's analysis of Dr. Steingart's note

6   implies that the ALJ found the note at odds with the ALJ's assessment of the evidence,

7   therefore implicitly supplying a reason for rejecting Dr. Steingart's assessment. (Def.'s Mem.

8   Supp. Cross  Summ. J. 10.)  Finally, Defendant contends that even if the ALJ failed to

9   properly supply reasons for rejecting the analysis, the ALJ's failure is without consequence,

10  given the other medical evidence in the record supplied by Dr. Rand, Dr. Drinkwater, and Dr.

11  Raymond.  (Id.)

12       The ALJ underwent a thorough summary of the medical evidence presented in this

13  case. (Tr. 18-19.)  The ALJ noted that on March 8, 2005, Dr. Steingart gave an assessment

14  that Plaintiff's leg pain improved significantly and he was able to stand, sit, and walk.  (Tr.

15  148.)  The ALJ found, based upon Dr. Steingart's own statements and other evidence in the

16  record, that Plaintiff's pain decreased after the epidural shots, even though he may still have

17  lower back pain. (Tr. 19.)  Although the ALJ did not specifically state that he was rejecting

18  Dr. Steingart's opinion, the ALJ stated that Plaintiff's reduction in leg pain was a reason for

19  the ALJ's rejection of Dr. Armold's and Dr. Porter's assessments.  (Id.)  The ALJ's

20  mentioning of Dr. Steingart's note, which indicated Plaintiff's leg pain decreased

21  significantly, along with the other findings of the ALJ in regards to the Plaintiff's work

22  abilities, allows for a logical inference that the ALJ rejected Dr. Steingart's assessment

23  because Plaintiff's pain level decreased from the epidural shots.  Finally, although Dr.

24  Steingart is a treating physician entitled to deference, his assessment of Plaintiff's work ability

25  is based in part on Plaintiff's subjective claims of pain, and the ALJ cited other medical

26  evidence in the record that contradicts Dr. Steingart's assessment.  (Tr. 148, 18-19.)

27  Therefore, the ALJ provided an adequate reason for rejecting Dr. Steingart's assessment and

28

did not commit legal error.

### 3. NP Stilwell and Dr. Porter's Assessment

Plaintiff asserts that the ALJ made a legal error when he mis-characterized NP Stilwell and Dr. Porter's assessment.  (Pl.'s Mem. Supp. Summ. J. 10.)  As noted above, Social Security Ruling 83-10 states that at the sedentary level of exertion, "periods of standing or walking should generally total no more than about two hours of an 8 hour workday, and sitting should generally total approximately 6 hours of an 8 hour workday." SSR 83-10, 1983 WL 31251 at *5.  However, the Ninth Circuit recognizes harmless error in the context of social security appeals.  Stout v. Commissioner, 454 F.3d 1050, 1054 (9th Cir. 2006).  The Court can affirm the ALJ's decision if the error is a mistake that is non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. Id.

In his decision, the ALJ characterized NP Stilwell and Dr. Porter's work assessment of Plaintiff as finding that Plaintiff is capable of sedentary work. (Tr.19.) Plaintiff correctly notes, however, that Dr. Porter's opinion of Plaintiff's ability to sit and stand in a normal workday falls below what is required for Plaintiff to have the capacity to do sedentary work. (Tr. 222.)  Although this is the case, the ALJ's characterization is without consequence because even if the ALJ did not mis-characterize Dr. Porter's assessment, the ALJ still rejected NP Stilwell and Dr. Porter's assessment as below the level of work the ALJ found Plaintiff is capable of performing.  (Tr. 18.)  Further, the ALJ did not rely on NP Stilwell and Dr. Porter's assessment to support his conclusions, and the ALJ specifically stated that their assessment was given little weight.  (Tr. 19.)  Therefore, the ALJ's mis-characterization constitutes harmless error.

Plaintiff also contends that the ALJ erred by not providing clear and convincing reasons for rejecting the assessment of Dr. Porter and NP Stilwell.  As stated above in the discussion of Plaintiff's other treating physicians, when the assessment of a treating physician is controverted, as is the case here, the ALJ must provide specific and legitimate reasons for rejecting the treating physician's opinion.

The ALJ stated that he rejected Dr. Porter's opinion because Plaintiff reported to Dr. Porter "that he was satisfied with the medications he received and with the level of control of his pain and continued to do part time plumbing work and other types of handyman jobs." (Tr. 19.) Plaintiff argues Plaintiff's satisfaction with his medications is an insufficient justification for the ALJ's rejection of NP Stilwell and Dr. Porter's work assessment. (Pl.'s Mem. Supp. Summ. J. 11.) Plaintiff contends that even though he stated that he was satisfied with his medications, he also described his pain as "continuous" and "increasing in severity." (Id.) Plaintiff's comments however, provide some evidence that the medications were adequately managing his pain. Further, Plaintiff does not have to be completely free of pain in order to perform light work. Plaintiff's admission that he was happy with his medications and that the medications made his life bearable are evidence that Plaintiff's pain was controlled to a level where he could perform light work.

Plaintiff also objects to the ALJ's using the fact that Plaintiff continued to work as a plumber and handyman as a second reason for rejecting Dr. Porter's assessment. (Pl. Mem. Supp. Summ. J. 11-13.) Plaintiff cites Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007), to support his argument that claimants should not be punished for attempting to work, but failing. (Id. at 12.) Also, Plaintiff argues that part time work does not show that Plaintiff is able to sustain work activity on a regular basis. (Id.) Further, Plaintiff argues that occasional symptom free periods are not entirely inconsistent with Plaintiff suffering from a disability. (Id.) Finally, Plaintiff contends that applying the ALJ's reasoning is contrary to the aims of the Social Security Act, which is to encourage individuals to return to gainful employment. (Id. at 13.)

The record indicates that Plaintiff continued to work part time as a plumber or handyman from 2004 through 2006. (Tr. 308.) The ALJ could infer from the Plaintiff's continued employment that he did not try and fail, but rather, he was successful in maintaining part time employment. Although part time employment is not the same as consistent full time work, Plaintiff's continued part time work lends support to the conclusion that Plaintiff's

symptoms are not as severe as he claims.  A finding that Plaintiff is capable of working based upon his work performance will not discourage individuals to attempt to return to employment because the Plaintiff in this case, did not merely attempt to work for a short period of time, but was successful in working part time for two years.  (Id.)  Therefore, the ALJ provided specific and legitimate reasons for rejecting Dr. Porter and NP Stilwell's assessment.

### 4.  Opinion of Consultative Examiner and State Agency Reviewer

### i. Consultative Examiner Dr. Rand

Plaintiff contends that it was legal error for the ALJ to rely on Dr. Rand's assessment because he does not qualify as an examining physician.  (Pl.'s Mem. Supp. Summ. J. 13-15.)  In addition, Plaintiff argues that Dr. Rand failed to disclose support for his findings, noting the state agency reviewing physician Thomas F. Disney, MD., found Dr. Rand's analysis was "seem[ing] to be unsubstantiated and [should] be given no weight,"[3] because the exam was not completed.  (Pl.'s Mem. Supp. Summ. J. 14; Tr. 216.)  Plaintiff also contends that Plaintiff's ability to perform basic physical tasks does not support Dr. Rand's findings concerning Plaintiff's work capabilities.  (Pl.'s Mem. Supp. Summ. J. 15.)  Finally, Plaintiff contends that there is no medical evidence to support the ALJ's findings, and the ALJ stepped outside his proper role in finding that Dr. Rand's opinion is consistent with Dr. Drinkwater's findings from his physical exam.  (Id.)  Defendant contends that Dr. Rand is an examining physician because he relied on his observations of Plaintiff's ability to move and Plaintiff's treating medical records.  (Def.'s Mem. Supp. Cross Summ. J. 5.)

As stated above, it is unclear how long Dr. Rand was able to examine Plaintiff.  Even if the exam was brief, however, it is clear Dr. Rand was able to interview and observe Plaintiff's mobility and was able to make a diagnosis based on Plaintiff's previous medical records.  (Tr. 217-18.)  Also, although Dr. Rand did not list his support for his findings in the

---

[3] Dr. Disney made his statement to the state agency disability examiner while at the reconsideration level.  (Pl.'s Mem. Supp. Summ. J. 14-15 n.10.)

1  RFC form, Dr. Rand wrote out a report that details his findings, which is included in the
2  record.  (Id.)

3       Further, Dr. Rand's opinions are consistent with other evidence in the record that
4  indicates Plaintiff's work ability is not as limited as he claims: Dr. Drinkwater's examination,
5  Dr. Raymond's analysis, and Plaintiff's testimony regarding his ability to travel and work part
6  time.  (Tr. 217-21, 214-16, 308, 318-19.)   Although Dr. Disney opined that Dr. Rand's
7  analysis is unsubstantiated, Dr. Disney stated in his own report that Plaintiff's claims
8  concerning his pain are only partially credible.  (Tr.135.)  Finally, Plaintiff's contention that
9  the ALJ went outside his proper role in determining that Dr. Rand's findings were consistent
10  with other medical findings is without merit.  When there is medical evidence that supports
11  either outcome, it is within the ALJ's province to resolve the conflict.  Magallanes, 881 F.2d
12  747, 751 (9th Cir. 1989).  There is a logical connection between Dr. Drinkwater's examination
13  findings that Plaintiff has a full range of motion and a normal gait, and Dr. Rand's diagnosis
14  that there are no true hurniations and Plaintiff was able to move with a brisk gait.  Therefore,
15  the ALJ did not err in relying on Dr. Rand's assessment.

16              **ii. State Agency Reviewer Dr. Raymond**

17       Plaintiff finally contends that the ALJ erred in relying on a non-examining source.  The
18  Ninth Circuit held that opinions of non-treating or non-examining physicians may also serve
19  as substantial evidence when "the opinions are consistent with independent clinical findings
20  or other evidence in the record."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

21
22       Plaintiff argues that Dr. Raymond's opinion does not constitute substantial evidence
23  because Dr. Raymond's opinion is not supported by independent evidence in the record.
24  (Pl.'s Mem. Supp. Summ. J. 16.)  Dr. Raymond's opinion, however, is supported by several
25  pieces of evidence within the record.   Dr. Raymond's opinion is supported by Dr.
26  Drinkwater's independent physical examination.   Further, Dr. Raymond's opinion that
27  Plaintiff's symptoms are not as limiting as Plaintiff claims is supported by Dr Rand's
28  diagnosis and findings that Plaintiff is capable of light work.  Finally, Dr. Raymond's findings

that Plaintiff is capable of light work is supported by Plaintiff's testimony regarding his ability to work part time and travel overseas.  (Tr. 308, 318-19.)  The ALJ gave a thorough summary of all of the medical evidence that supports Dr. Raymond's opinion, including Dr. Drinkwater and Dr. Rand's conclusions.  (Tr. 18-19.)

Plaintiff also argues that the ALJ did not mention Dr. Raymond's review of the MRI and his conclusions that there was severe foraminal stenosis at L4-5, moderate foraminal stenosis at L3-4, a bulging annulus, ligamentum and facet hypetrophy, and osteophyte ridging.  (Pl.'s Mem. Supp. Summ. J. 17-18.)  Although this is the case, both the ALJ and Dr. Raymond do not claim that Plaintiff does not suffer from a back condition.  Rather, the opinion of the ALJ, based in part on Dr. Raymond's opinion, is that Plaintiff's pain is not as severe as he claims and he is capable of performing light work.  (Tr. 18.)

Finally, Plaintiff argues that Dr. Raymond's opinion is not supported by independent clinical findings.  (Pl.'s Mem. Supp. Summ. J. 18.)  Even if this is the case, however, as stated above, there is other independent evidence in the record to support Dr. Raymond's assessment.  Therefore, the ALJ did not commit legal error in relying on Dr. Raymond's findings that Plaintiff is able to perform light work.

## B. The Impact of Plaintiff's Obesity

Plaintiff asserts that the ALJ erred in not considering the effect of Plaintiff's obesity on his claim for benefits.  (Id. at 19.)  Defendant cites Tackett v. Apfel, 180 F.3d 1094, 1097 n.3 (9th Cir. 1999), to argue that Plaintiff has the burden of proving the disabling level of his impairment and Plaintiff in this case failed to provide any evidence that obesity alone prohibits Plaintiff from performing his past work.  (Def.'s Mem. Supp. Cross Summ. J. 12.)  SSR 02-01p states that an assessment should be made on how a claimant's obesity affects that individual's ability to work.  SSR 02-01p, 2000 WL 628049 at *6-7.  The Ruling makes this recommendation because the combination of obesity with other severe impairments may have a greater effect than if the Plaintiff did not suffer from obesity.  Id.

1    The ALJ noted in his decision that with regard to SSR 02-01p, he considered Plaintiff's

2    obesity in reaching his conclusions.  (Tr. 18.)  Further, the ALJ found that in addition to

3    Plaintiff's back condition, Plaintiff's obesity is a severe impairment.  (Tr. 17.)  The ALJ

4    reviewed all of the medical evidence, which includes all of the recommendations from the

5    physicians who made an assessment about Plaintiff's work ability.   Included in these

6    assessments and attached reports are discussions of Plaintiff's obesity and the need for

7    Plaintiff to lose weight.  (Tr. 163-64, 217.) Further, Plaintiff did not provide any medical

8    evidence that Plaintiff's obesity alone limits his ability to perform his past work.  Therefore,

9    the record indicates that the ALJ properly considered the impact that Plaintiff's obesity had

10   on his RFC, and the ALJ did not commit legal error.

11   **C.  Plaintiff's Symptom Testimony**

12   Finally, Plaintiff contends that the ALJ erred in failing to provide clear and convincing

13   reasons for rejecting Plaintiff's subjective contentions concerning Plaintiff's impairments.

14   (Pl.'s Mem. Supp. Summ. J. 20; Resp. Def. Mem. Supp. Cross Summ. J. 17.)   In order to

15   determine the credibility of a claimant's symptom testimony, the ALJ must engage in a two-

16   step process.  Lingenfelter v. Astrue, 504 F.3d 1029, 1035 (9th Cir. 2007).  First, a claimant

17   who alleges disability based on subjective symptoms "'must produce objective medical

18   evidence of an underlying impairment which could reasonably be expected to produce the

19   pain or other symptoms alleged.'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)

20   (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  Here, the Plaintiff has fulfilled that burden by

21   providing Dr. Armold's and Dr. Steingart's assessments that Plaintiff suffers from a back

22   disorder that could reasonably be expected to produce lower back pain.  (Tr. 139-41, 147.)

23   If the claimant meets the above test, the ALJ may reject the claimant's testimony due

24   to a lack of credibility, but the ALJ must provide clear and convincing reasons to justify the

25   rejection.  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  Further, the ALJ must

26   specifically identify the testimony that he rejects as not credible and must explain what

27   evidence undermines the testimony.  Id.  In evaluating Plaintiff's credibility, the ALJ must

28

1 also consider factors such as the "claimant's work records and observations of treating and
2 examining physicians and other third parties regarding . . . the nature, onset, duration, and
3 frequency of the claimant's symptom; precipitating and aggravating factors; functional
4 restrictions caused by the symptoms; and the claimant's daily activities." Id. at 1284.

5      Here, the ALJ provided several specific reasons to support his conclusion that
6 Plaintiff's testimony lacks credibility. First, the ALJ found that Plaintiff has a history of not
7 being forthcoming with the Social Security Administration. (Tr. 20.) Specifically, the ALJ
8 points out that Plaintiff did not report any earnings after 2004, but his medical records indicate
9 that Plaintiff did work part time. (Id.) Further, the ALJ notes that at the hearing, Plaintiff was
10 not candid about his prior work history and failed to disclose that he had been a manager of
11 a rental property.  (Id.)  A report from the Desert Pain and Rehab Specialists, and Dr.
12 Armold's assessment in 2006, indicate that Plaintiff continued to work as a plumber part time
13 since 2004. (Tr. 241, 237, 228-29, 254, 258.) During the hearing, however, Plaintiff admitted
14 that he failed to report any of his earnings after 2004 to the Social Security Administration.
15 (Tr. 323.) The hearing transcript also indicates that Plaintiff did not provide a straightforward
16 answer to the ALJ's questions concerning whether he managed the rental property. (Id. 321).
17 At first, Plaintiff denied managing the property, but thereafter admitted that he received rent
18 and he did in fact manage the property.  (Id.)

19      Second, The ALJ found Plaintiff's testimony lacked credibility because both Dr.
20 Steingart and Dr. Armold recommended that Plaintiff lose weight, and by 2006, Plaintiff had
21 gained weight. (Tr. 20.)  The Ninth Circuit held that in order to detract from a claimant's
22 credibility due to a failure to lose weight when the claimant is obese, losing weight must have
23 been a prescribed treatment and there must be clear evidence that the treatment would be
24 successful. Orn, 495 F.3d at 637.  Here, Plaintiff's treating physician prescribed a 2000
25 calorie per day diet. (Tr. 164.) In addition, Dr. Rand told Plaintiff that losing weight would
26 reduce the amount of pain he felt in his back. (Tr. 217.)  Therefore, there is clear evidence

27
28

1   to show that losing weight would most likely be a successful treatment option, and the ALJ
2   properly considered Plaintiff's failure to lose weight in assessing Plaintiff's credibility.

3          Third, the ALJ found Plaintiff's testimony lacked credibility because Plaintiff
4   continued to do heavy plumbing work, and then requested more pain medicine for the pain
5   that resulted.  (Tr. 20.)  Plaintiff argues that finding more work should enhance his claim to
6   disability, not undermine it.  (Pl.'s Mem. Supp. Summ. J. 21.)  Defendant argues that Plaintiff
7   aggravated his pain by continuing to attempt to work as a plumber instead of using his skills
8   in a different line of work that required less physical strain.  (Def. Mem. Supp. Cross Summ.
9   J. 14.)  The vocational expert testified that Plaintiff could have pursued jobs where he could
10  use his skills without aggravating his back condition.  (Tr. 329.)  These jobs include a
11  plumbing tester, plumbing inspector, and light repair work.  (Id.)  Plaintiff chose, however,
12  to continue to do heavy plumbing work that caused his pain to increase.  (Tr. 228.)

13         Fourth, the ALJ found Plaintiff's testimony lacking in credibility because Plaintiff was
14  able to travel to Minnesota in 2004, Austria for one month in 2004, and the Ukraine in
15  October 2005.  The hearing transcript indicates that Plaintiff was able to fly to the Ukraine
16  for vacation.  (Tr. 318.)  Further, Plaintiff testified in the hearing that he only took one
17  overseas vacation, but his medical records indicate that he also traveled to Europe for a month
18  in late 2004.  (Tr. 318, 159, 157.)

19         Finally, the ALJ found Plaintiff's testimony lacking in credibility because Plaintiff
20  leads an active lifestyle, which includes caring for himself, driving, doing chores, shopping,
21  using the computer, reading, and working on a part time basis. (Tr. 316-18.)  Plaintiff cites
22  the Ninth Circuit case Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001), to argue
23  Plaintiff's ability to complete daily chores and activities does not detract from Plaintiff's
24  credibility in regards to his disability.  (Pl.'s Mem. Supp. Summ. J. 22.)  Although this is the
25  case, as Defendant properly notes, Plaintiff was able not only to complete daily chores and
26  activities, but also was able to work part time and start his own plumbing business.  (Tr. 20,
27
28

101-04, 283.)   Therefore, the ALJ properly used Plaintiff's active lifestyle as a basis for finding Plaintiff's testimony lacked credibility.

Overall, the ALJ has provided several clear and convincing reasons, supported by evidence in the record, to justify the ALJ's finding that Plaintiff's testimony is not credible.

**VI. CONCLUSION**

The Court finds that the ALJ did not commit legal error by denying Plaintiff's claim for benefits.  The Court further finds that the ALJ's decision was adequately supported by the evidence on record.

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 14) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. # 21) is **GRANTED**.

DATED this 5th day of September, 2008.

James A. Teilborg
United States District Judge